UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **VENUS VELONIS PIERCE,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CAROLYN W. COLVIN, Acting** ) <br> **Commissioner of the Social** ) <br> **Security Administration,** ) <br> ) <br> Defendant. ) <br> _____) | **Case No. 13-00750 AJW** <br><br> **MEMORANDUM OF DECISION** |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. Plaintiff alleges that she became disabled on December 6, 2007 at the age of 55.[1] [JS 2;

---

[1] Because plaintiff's insured status expired on December 31, 2011, before the date of the Commissioner's final decision in this matter, the oldest age at which plaintiff may be evaluated for purposes of her claim for disability insurance benefits is 59, her age on that date. See SSR 83-10, 1983 WL 31251, at *8 ("Under title II, a period of disability cannot begin after a worker's disability insured status has expired. When the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured. In these

1 Administrative Record ("AR") 43-44, 140]. In a June 19, 2012 written hearing decision that
2 constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff
3 retained the residual functional capacity ("RFC") to perform her past relevant work as a customer service
4 representative and therefore was not disabled at any time through the date of the ALJ's decision. [AR 20-
5 33].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ failed to articulate specific, legitimate reasons based on substantial evidence for rejecting the opinion of treating physician Robert Steinberg, M.D. [See JS 3-15].

The ALJ found that plaintiff had exertional and nonexertional limitations that restricted her to a narrowed range of light work. [AR 24-25]. The ALJ rejected more severe limitations described in December 2011 and January 2012 assessments by Dr. Steinberg, who was plaintiff's treating internist. [AR 30-31, 281-295, 296-303].

In his January 2012 report, Dr. Steinberg said that plaintiff had diagnoses of fibromyalgia; chronic

---

situations, the person's age at the time of decisionmaking is immaterial.").

1  neck pain; chronic low back pain with bilateral L5-S1 radiculopathy; left median neuropathy; right lower
2  extremity peripheral vascular disease, atherosclerotic; chronic obstructive pulmonary disease ("COPD");
3  insomnia; and anxiety. [AR 291]. He opined that, during an eight-hour work day, plaintiff had exertional
4  and nonexertional limitations that would limit her to what amounts to less than a full range of sedentary
5  work. Among other things, Dr. Steinberg opined that plaintiff would need to take unscheduled rest breaks
6  of at least 20 minutes at unpredictable intervals during the work day and was likely to miss work more than
7  three times a month as a result of her impairments. [AR 292-294].

8  In general, "[t]he opinions of treating doctors should be given more weight than the opinions of
9  doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick
10 v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.
11 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-
12 examining physicians because "treating physicians are employed to cure and thus have a greater opportunity
13 to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.
14 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling
15 ("SSR") 96-2p, 1996 WL 374188).

16 A treating physician's medical opinion as to the nature and severity of an individual's impairment
17 is entitled to controlling weight when that opinion is well-supported and not inconsistent with other
18 substantial evidence in the record. Edlund, 253 F.3d at 1157; Holohan v. Massanari, 246 F.3d 1195, 1202
19 (9th Cir. 2001); see see 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); SSR 96-2p, 1996
20 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are
21 still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2)
22 the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability
23 of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization.
24 Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d
25 at 1202.

26 If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons,
27 supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor,
28 a treating or examining source opinion may be rejected for specific and legitimate reasons that are based

on substantial evidence in the record. Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ gave two reasons for rejecting Dr. Steinberg's opinion that plaintiff had more severe limitations than the ALJ included in her RFC finding. The first reason given by the ALJ was that plaintiff's treatment visits were "infrequent and over a relatively brief period, including only one treatment appointment in [June] 2009 and four appointments in 2011. As a result, the treating relationship did not last long enough for Dr. Steinberg to have obtained a longitudinal picture of [plaintiff's] medical condition." [AR 31 (citing AR 304-314)]. As a result, the ALJ concluded that Dr. Steinberg's opinion did "not merit the same weight that would be given to a treating physician with a treating relationship of a longer duration." [AR 31].

The Commissioner defines a "treating physician" as a physician "who provides . . . , or has provided . . ., medical treatment and evaluation and who has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1502, 416.902. An "ongoing treatment relationship" may exist where a physician "has treated or evaluated" the claimant "only a few times or only after long intervals (e.g., twice a year) . . . if the nature and frequency of the treatment or evaluation is typical" for the claimant's conditions. 20 C.F.R. § 404.1502, 416.902; see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (stating that the length of a treatment relationship, the frequency of examination, and the nature and extent of treatment are factors that an ALJ considers in determining how much weight to give a treating source opinion).

The ALJ erred in evaluating the evidence in the record concerning the treatment relationship between plaintiff and Dr. Steinberg. The ALJ found that Dr. Steinberg saw plaintiff five times in two and half years; however, the record indicates that plaintiff actually saw Dr. Steinberg significantly more frequently, and over a longer period of time, prior to her date last insured. In the "Record Review" section of his January 2012 report, Dr. Steinberg noted the dates and summarized his treatment notes of eight office visits with plaintiff from June 2008 through February 2009.[2] The ALJ discussed that report in her decision

---

[2] The Commissioner notes that Dr. Steinberg's January 2, 2012 report was written after plaintiff's date last insured [JS 12 n.1], but that report was dated just two days after the December 31, 2011 expiration of plaintiff's insured status and was based on Dr. Steinberg's treatment of

4

1 but failed to note the reference to those additional office visits, which, unfortunately, were not documented
2 by contemporaneous treatment notes in the record. [See AR 282-285]. Plaintiff also submitted to the
3 Appeals Council a January 2013 letter from Dr. Steinberg disputing the conclusion that he saw plaintiff only
4 five times, noting the dates of his appointments with plaintiff, and asserting that "13 appointments in three
5 or so years certainly has given me a very accurate picture of [plaintiff's] condition." [AR 397]. Dr.
6 Steinberg also asserted that plaintiff "is known by me to have had these diagnoses, with symptoms
7 appropriate for what is usually seen in these conditions, for at least three years." [AR 397].

8 The ALJ gave no indication that she "consider[ed] whether [Dr. Steinberg] saw [plaintiff] with a frequency consistent with accepted medical practice for this type of treatment . . . ." Benton v. Barnhart, 331 F.3d 1030, 1039 (9th Cir. 2003). Five visits in two and half years may be sufficient to demonstrate a treatment history that warrants giving deference to the treating source opinion. See Benton, 331 F.3d at 1036 (noting that section 404.1502 does not establish a "floor" for the minimum number of contacts that constitutes an ongoing treatment relationship, but instead asks whether the frequency of contact is consistent with accepted medical practice for treatment and/or evaluation of the claimant's medical condition); Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (holding that a physician who treated the claimant twice in fourteen months was "without doubt" a treating physician whose opinion was entitled to deference where: (1) the claimant requested and received treatment from that doctor and listed the doctor as his treating physician; and (2) the doctor referred to the claimant as "my patient" and was "the doctor with the most extensive contact with" the claimant ). In any event, *thirteen* visits in *three and a half years* places Dr. Steinberg significantly farther along the "continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact." Benton, 331 F.3d at 1038 (quoting Ratto v. Sec'y, Dep't of Health & Human Servs., 839 F. Supp. 1415, 1425 (D. Or. 1993)). The ALJ's failure to consider material evidence relevant to Dr. Steinberg's treatment relationship with plaintiff was legal error.

In concluding that Dr. Steinberg's opinion did "not merit the same weight that would be given to a treating physician with a treating relationship of a longer duration," the ALJ also misapplied the relevant legal standard. The issue is not whether Dr. Steinberg's opinion merits the same weight as the opinion of

---

28 plaintiff from 2008 through 2011. Therefore, the date of that report provides no basis for rejecting it.

a hypothetical treating physician with a longer treatment relationship because there is no "bright line" test for the duration of an "ongoing treatment relationship." See Benton, 331 F.3d at 1036-1039. The issue is whether Dr. Steinberg's treatment relationship with plaintiff, along with other relevant factors, warrants giving his opinion greater weight than conflicting medical opinions in the record. See generally Lester, 81 F.3d at 830-831 (summarizing the rules governing the evaluation of medical opinions). In this case, the record contained conflicting medical opinions from a a consultative examining internist and the nonexamining state agency physicians, all of whom opined that plaintiff could perform a range of light work. [See AR 29-30]. The ALJ gave "significant weight" to those opinions, but she also adopted some additional restrictions "on a function-by-function basis that are best supported by the objective evidence as a whole." [AR 29-31]. By definition, neither an examining or nonexamining physician (nor, obviously, the ALJ herself) had *any* treatment relationship with plaintiff, so unless there are other legally sufficient reasons for rejecting Dr. Steinberg's treating source opinion, his treatment relationship with plaintiff weighs in favor of giving his opinion more weight than those of the nontreating physicians. Cf. Lester, 81 F.3d at 832 (holding that while an examining physician's "limited observation" of the claimant "would be a reason to give less weight to [that doctor's] opinion than to the opinion of a treating physician, it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant") (italics in original).

The Commissioner argues that the ALJ was justified in rejecting Dr. Steinberg's disability opinion because there was a two-year gap in his treatment relationship with plaintiff. [JS 12 (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)]. Johnson held that an unexplained gap in treatment can undermine the credibility of a claimant's subjective complaints because a permissible inference arises that "if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time." Johnson, 60 F.3d at 1434. For purposes of evaluating Dr. Steinberg's opinion, the ALJ properly focused not on a gap in treatment, but on the broader question of the duration and frequency of plaintiff's treatment relationship with Dr. Steinberg as a whole. The problem is that the ALJ did not consider all of the material evidence and did not properly apply the relevant legal standard.

The second reason given by the ALJ for discrediting Dr. Steinberg's opinion was a lack of supporting objective medical evidence, but that conclusion fails to take into account the medical evidence

concerning plaintiff's treatment with Dr. Steinberg in 2008 and early 2009. In addition, the ALJ identified only one aspect of Dr. Steinberg's opinion that she rejected on that ground, his conclusion that plaintiff would miss more than three days of work. [AR 31]. When an ALJ concludes that "medical opinions are not supported by sufficient objective findings," she "must do more than offer h[er] own conclusions. [She] must set forth h[er] own interpretations and explain why they, rather than the doctors', are correct." Regennitter v. Comm'r of the Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999). The ALJ erred in failing adequately to explain why the objective medical evidence did not support Dr. Steinberg's opinion as a whole.

For all of these reasons, the ALJ failed to articulate specific, legitimate reasons for rejecting Dr. Steinberg's opinion.[3]

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the "Smolen test" to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)). Where the Smolen test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" the improperly discredited evidence. Harman, 211 F.3d at 1179; Varney v. Sec'y of Health &

---

[3] This conclusion makes it unnecessary to consider plaintiff's contentions regarding the ALJ's evaluation of plaintiff's subjective testimony and the testimony of her husband. [See JS 15-31; AR 26-28]. The ALJ's credibility findings depended in material part upon the ALJ's incomplete analysis of the treating source evidence and therefore cannot stand.

7

Human Servs., 859 F.2d 1396, 1400-1401 (9th Cir. 1988).

Both plaintiff and the ALJ bear responsibility for the incomplete or ambiguous state of the record in this case.[4] Dr. Steinberg's January 2012 letter indicates that the record was incomplete or at a minimum ambiguous, triggering the ALJ's duty to develop the record. See Mayes v. Massanari, 276 F.3d 453, 459-460 (9th Cir. 2001). Although the ALJ failed to do so and erred in weighing Dr. Steinberg's opinion, plaintiff also failed to meet her obligation to produce all of her treatment records from Dr. Steinberg. During the hearing, plaintiff argued that Dr. Steinberg's January 2, 2012 supported her disability claim without explaining why some of the underlying treatment records were missing or asking for the ALJ's help in obtaining them. [See AR 43, 67-68]. Under these circumstances, a remand for further administrative proceedings is appropriate so that the record can be fully developed and a decision can be made based on a complete record. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (stating that courts within the Ninth Circuit have "some flexibility in applying the 'crediting as true' theory" and remanding to permit the ALJ to make additional credibility determinations); Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including whether, according to a vocational expert, there was alternative work the claimant could perform). On remand, the Commissioner is directed to take appropriate steps to ensure that the record is fully developed and to issue a new hearing decision containing appropriate findings.

///

///

///

---

[4] The Commissioner's regulations charge the claimant with responsibility for coming forward with, or cooperating in the procurement of, all evidence material to the disability determination. See 20 C.F.R. §§ 404.1512(a)-(c), 416.912(a)-(c), 404.1513(e), 416.913(e)); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (stating that plaintiff bears the burden of proving she is disabled and must produce "complete and detailed objective medical reports of her condition from licensed medical professionals") (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). However, the ALJ also has an independent duty to ensure that the record is fully and fairly developed. See 20 C.F.R. §§ 404.1512(d), 416.912(d); Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and the case is **remanded** for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

May 23, 2014

_____
ANDREW J. WISTRICH
United States Magistrate Judge